THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. EDUARDO ALVARADO, Defendant and Appellant.

No. 9082. Argued February 6, 1942.—Decided February 27, 1942.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The District Attorney of Ponce filed an information against Eduardo Alvarado charging that "on or about February 27, 1941, in Juana Díaz, P. R., . . . he did unlawfully and wilfully carry . . . . a revolver, a deadly weapon, said revolver being an instrument with which bodily injury may be inflicted."

By stipulation between the parties the case was tried jointly with another prosecution for a violation of the Registration of Firearms Act, on the 25th of last June. Both parties introduced evidence, and after the trial the court found the defendant guilty and sentenced him to one month in jail for the offence of carrying a weapon. Act to prohibit the carrying of arms, approved June 25, 1924, §1, p. 114.

Feeling aggrieved by that decision, the defendant appealed. In his brief he urges that the trial court erred (1) in convicting him without proof that he was carrying a weapon on a public highway, and despite the fact that it had been shown that the carrying of it "had been done on a private road," and (2) in rendering a judgment "at variance with the facts and the law."

▮▮ The evidence for the prosecution consisted of the testimony of I. P. Chief Guillermo Soldevila and policeman Manuel Maura; also of a sworn statement made by the defendant in the preliminary investigation, which in its pertinent part reads as follows:

"That on the night of February 27, 1941, at about nine or ten o'clock, as I was going in the direction of the house of Lucila Camacho and while passing between two cane fields which lie on either

side of the road, Julio Cruz armed with a weapon suddenly attacked me and the first thing he did was to club my left leg on the knee, and on being struck I rushed at him and grabbed his hand and immediately fired at him and after the shot I noticed that his body sagged and then I found a knife in his hand. Then I ran away . . . . when I reached Lucila's house I told her what had happened and then I went on running towards the river and there I lost the revolver which was found today, at about 7 p. m., by my boss, Juan de Dios Colón, and the municipal judge, in a ditch rather deep, and I went in and fetched it.''

Chief Soldevila testified thus:·

''In the ward (barrio) of Cintrona Primera, Juana Díaz, somebody had been killed and on that account the municipal judge and I went to the place of the occurrence. After an investigation, we proceeded to the central's establishment in charge of the defendant whom we arrested. He first denied the facts and then admitted that he had shot that individual, whose name I do not remember, the deceased, with a revolver. That he had run away and had thrown the revolver into a ditch. Then, later on, the defendant went, together with the municipal judge and Juan de Dios Colón, to get the revolver at the place where he had thrown it. It was a nickel-plated 38- caliber revolver that he admitted to have handled and which he had failed to register.''

The testimony of policeman Maura corroborates the forgoing statements.

The carrying of the weapon by the defendant was established by that evidence.

It is so admitted by the defendant, but he maintains that as the government failed to prove that he was carrying the weapon in a public place, and as he showed that when carrying it he was on the land where the shop of which he had charge was located and which belonged to the owner of said land, he did not commit any offense, according to the doctrine laid down by this court in People v. Díaz, 37 P.R.R. 426.

Indeed, it does not appear from the evidence introduced by the prosecution that the weapon was being carried on any public road, and such evidence being supplemented by that of the defendant it appears that the carrying of the

weapon took place in Juana Díaz, within the farm Cintrona Primera—settlement of the Central owned by Sucesión Serrallés—on the settlement's square and near an irrigation ditch pertaining to its cane fields.

In view of these circumstances, is the defendant's case covered by the doctrine invoked by him? Let us consider first how said doctrine originated. In *People* v. *Díaz, supra,* this court said:

"The undisputed evidence both of the government and of the defense showed that the alleged offense took place within the farm Australia, property of Successors of José María Ortiz, and that the defendant lived within that farm; likewise that the mayordomo of the said property had constituted the defendant a watchman to cover the part of the day when the alleged offense was committed.

"*     *     *     *     *     *     *

"The evidence of both parties left no doubt that the defendant was employed as a watchman. If he was employed as a watchman he had a right to bear a weapon under other exceptions of the law. The fact that he used the weapon illegally would make no difference. *People* v. *Segarra,* 36 P.R.R. 103. We need not, however, base our decision on this defense.

"The evidence was clear that the alleged illegal use took place within the property Australia. Hence it became the duty of the government clearly to show that some part of that property or some road therein became public. One of the witnesses said it was a public road because the workmen traveled over it. This was either a conclusion of law or the mere opinion of the witness. It did not tend to show that Successors of José María Ortiz had parted with any part of their ownership in the property Australia. As against a private owner the public or any one else must show an adverse use, *Non constat* that Successors of José María Ortiz might have closed the road at any time.

"As this was the property of the said successors any one of their agents or employees was also within his own property, as pointed out by appellant in his memorandum of authorities." 37 P.R.R. 427, 428.

That holding, indeed, was made in terms so ample that it seems to cover the case at bar. However, there are special

circumstances in the latter which, in our opinion, place it without the scope of the cited decision.

In the first place, the status of watchman as applicable to the defendant must be disregarded. What the evidence showed at most was that he had charge of a shop within the settlement belonging to the owner thereof. In the second place, the defendant's evidence itself disproved his theory that he had been authorized by the owner of the property to carry a weapon for the defense of such property.

According to defendant's own testimony, the weapon did not belong to the owner of the settlement and shop, nor did he carry the same for the defense of any property. He stated that one day somebody he did not know came to the shop and handed him a package to be kept until he called for it, and as such service was frequently rendered he did not mind accommodating him. Shortly afterwards, while examining the package he noticed that there was a revolver in it, and thereupon he reported such fact to the general manager of the settlement, who advised him to take the weapon to the police station. In order to do this he went out on the night of the occurrence and, after he had left the shop, but still within the settlement, a person assaulted him and he shot the former with the revolver he was carrying.

It seems that the defendant, having little faith in his first theory, attempted to substitute the same by another: the casual carrying of the weapon which, as we have held in some cases, does not constitute a public offense. *People* v. *Pérez,* 40 P.R.R. 724; *People* v. *Borges,* 23 P.R.R. 486.

The defendant's testimony was not believed by the trial court, and as it was shown that the revolver did not belong to the settlement, the carrying thereof by the defendant outside the store and within the settlement's grounds, independently of his duties in connection with his employment, is the ultimate fact, and although that fact might be considered as being more or less covered by the language of our

decision in *People* v. *Díaz, supra,* it does not come within the the spirit thereof. It would be very risky, indeed, to extend so far the holding invoked. In the case at bar, moreover, it was not shown that the defendant was living within the settlement in the sense of residing therein. He used to work, have his meals, and sleep there during the week, but his domicile was in Ponce.

The same holding which we announced in *People* v. *Sánchez,* 50 P.R.R. 689, to wit: "The carrying of a weapon is in itself an offense unless it falls within some of the exceptions allowed by the law, among which this case is not included," can and should be made in the present case.

The appeal must be denied and the judgment appealed from affirmed.